HATHAWAY *v.* VAUGHAN.

1. CORPORATIONS—STOCK—SALE—CONTRACTS.

A corporation may sell its capital stock at par and at the same time, in good faith, sell its personal property for a sum payable partly in cash, partly, if at all, from dividends thereafter to be declared upon the stock issued to the vendee of the personalty, and may not, without disaffirming the agreement and retendering the consideration, recover the value of the personal property.

2. CONTRACTS—IMPLIED AND EXPRESS OBLIGATIONS.

The existence of an express contract executed upon both sides precludes recovery upon an implied contract relating to the same matters.

3. SAME—ACTIONS.

The commencement of an action of assumpsit affirms a contract where one exists and has not been disaffirmed.

Case made from Eaton; Smith J. Submitted June 9, 1910. (Docket No. 34.) Decided July 14, 1910.

Assumpsit by C. Roy Hathaway, trustee in bankruptcy of the Dolson Automobile Company, against Barret D. Vaughan, for the price of an automobile. A judgment for defendant is reviewed by plaintiff on writ of error. Affirmed.

*Frank A. Dean* and *Thomas, Cummins & Nichols,* for appellant.

*Garry C. Fox,* for appellee.

This is an action in assumpsit to recover the value of an automobile, sold by plaintiff's insolvent to defendant. The facts agreed upon by the parties and adopted by the court are as follows:

"(1) That the Dolson Automobile Company was incorporated under the general law for the incorporation of manufacturing and mercantile enterprises on the 11th day of October, 1905.

"(2) That they were incorporated for the purpose of manufacturing and selling automobiles, and did manufacture and sell automobiles from the date of the incorporation up to the time of its bankruptcy.

"(3) That one L. M. Disney was the general manager of said corporation and had authority from said corporation to sell its stock.

"(4) That he (Disney) had a contract with the corporation to sell its stock; he to receive as compensation and expenses the sum of 15 per cent. of the stock sold.

"(5) That one George Stephens was employed by Mr. Disney to sell such stock, and had a talk with the defendant in regard to the purchase of stock, and also of a sale to the defendant of an automobile.

"(6) That he (Stephens) represented that the company at such time could declare a dividend of 50 per cent., and offered the defendant, if he would buy 100 shares of stock at par value of $1,000, that the company would accept the dividends on such stock for four years, and that such dividends with a cash payment of $500 should pay for the automobile, if any, which he (the defendant) purchased of the Dolson Company.

"(7) That the defendant came to Charlotte and had a talk with Disney, who verified such offer so made by Mr.

Stephens, and did so after he had a talk with the three Dolsons, namely, John L. Dolson, D. Eldo Dolson, and W. Elton Dolson; the three being directors of said corporation.

"(8) That Stephens, as an inducement to defendant to purchase said stock and said automobile, represented to him or furnished him with an itemized statement showing that the total cost of said automobile, which was sold at the market price of $2,500 without top, was $1,272.06; that that was, as appeared later, in the nature of an estimate; and that the real cost, including cost of sale, was something like $1,400.

"(9) That on the 1st day of February, 1907, the defendant, after talking the matter over with Mr. Disney, and after Mr. Disney had referred the matter to the three Dolsons above named, entered into a contract or gave what might be called a note, which reads as follows:

"'CHARLOTTE, MICHIGAN, Feb. 1, '07.

"'Four years after date, for value received, I promise to pay Dolson Automobile Company of Charlotte, Michigan, $2,670.00, for one Dolson automobile, Model H, with full lined top complete with all accessories. It is understood that payment of this paper is to be by dividends on certificate of stock 127 and in no other way, and on the dividends accruing on this stock in the next four years. If at the end of four years from date said dividends have not paid this note, it is to be delivered to the signer paid, excepting $500, which is to be paid previous to the 15th of February. Machine to be delivered to B. D. Vaughan, Bellevue, Michigan, not later than April 1, 1907.'

"(10) That such contract was signed by the defendant and accepted by the Dolson company, and on the same day the defendant paid to the Dolson Automobile Company $1,000 for 100 shares of stock pursuant to said contract, which certificate of stock was numbered 127.

"(11) That later and on or before the 15th day of February the defendant paid the $500, which was indorsed upon the contract above referred to.

"(12) That the defendant has paid no other sum or sums for the automobile which was contracted for and delivered to him on April 1, 1907.

"(13) That at the time the Dolson Automobile Company and the defendant entered into this contract, and at the time the defendant purchased the stock referred to, the company was insolvent; but this fact was known

neither to the officers of the corporation nor to the defendant.

"(14) That the company never earned or declared any dividends.

"(15) That on the 9th day of July, 1907, at a meeting of the directors of said corporation, there were also present by representatives a large number of creditors; that it was arranged there by the directors of the corporation that a competent bookkeeper to be named by the directors was to be placed in full charge of the affairs of the company; that the bookkeeper was to be placed under a good and sufficient bond to be paid for by the company conditioned to account to the said company and to the said creditors of the said company weekly as to all moneys received and disbursed in carrying on the said business; that a competent superintendent was to be employed by said Dolson Company to have the entire charge of manufacturing the output of said corporation; that the directors should act in co-operation with the creditors and should hold weekly meetings on Thursday of each week at 4 o'clock p. m., at which meetings there should be reports read of its financial affairs, and in case the creditors should deem it advisable they should be represented on said board of directors.

"(16) That the largest creditors of the company had agreed that no one of them should be preferred over any other in the way of collecting accounts.

"(17) That the Dolson Company was adjudicated a bankrupt on the 26th day of November, 1907, and on the 17th day of December, 1907, C. Roy Hathaway was appointed trustee; he being the plaintiff in this suit.

"(18) That the list price of the automobile which was purchased or of the class of automobiles one of which was purchased by the defendant was $2,500, and in addition thereto was a top at $150 and a speedometer at $20, for which the note was given, that being the purchase price, $2,670, and that that was the usual selling price of the machine."

The case was tried by the court, and a judgment was entered for defendant. Plaintiff has removed the case to this court for review by writ of error.

BROOKE, J. (*after stating the facts*). It is urged by appellant that the contract entered into between his insol-

vent and defendant was an absolute nullity; that it amounted in effect to an agreement on the part of plaintiff's insolvent to pay dividends upon defendant's stock, whether such dividends were earned or not; and that, the contract having been performed by the insolvent, the trustee may maintain an action in assumpsit, upon the ground that the defendant has accepted and appropriated the benefit of the contract—this alleged right of action resting, not upon the contract, but upon the duty, promise, or obligation springing from the property, money, or benefit conferred by plaintiff and received by defendant.

We think that appellant is in error upon each one of the foregoing propositions. There can be no doubt that the responsible officers of a corporation may sell its capital stock at par, and may likewise, in good faith, sell its personal property for a sum, part to be paid in cash, and the balance, if paid at all, to be paid from dividends thereafter to be declared upon the stock of the corporation sold to the vendee of the personal property in the same transaction.

It will be noted that the corporation did not agree to pay dividends upon the $1,000 of stock sold, to the amount of $2,170, within four years. It did agree that it would accept $500 in cash and such dividends upon the stock as might be declared, up to the amount of $2,170, within four years, in full consideration for the automobile, and further, that if, within said period, the dividends declared did not amount to $2,170, then the $500 cash, paid by defendant, should be accepted by the corporation in full of his obligation. This contract was entered into between the corporation and defendant in good faith, and in the evident belief that the stock sold was worth the sum paid for it by defendant, and would produce dividends to meet the balance of the obligation. As a matter of fact, the stock was absolutely worthless. While this was unknown to the corporation, or its responsible officers at the time, it had the means of ascertaining the truth, while the

162 MICH.—18.

defendant was obliged to rely upon the representations of the corporation as to the value and probable earnings of the stock. This was not a contract between a corporation and a stockholder, but one between the corporation and a stranger, by the terms of which the stranger became a stockholder and vendee of certain personal property.

Plaintiff cannot recover upon the theory of an implied contract. The contract was express and fully executed upon both sides. Defendant has done all he agreed to do, and plaintiff's insolvent has done nothing more than it contracted to do. *Galloway* v. *Holmes*, 1 Doug. (Mich.) 330; *Van Fleet* v. *Van Fleet*, 50 Mich. 1 (14 N. W. 671); *Searles* v. *Reed*, 63 Mich. 485 (29 N. W. 884).

An action in assumpsit affirms a contract where there is one. *Galloway* v. *Holmes, supra.*

Aside from this, neither plaintiff nor his insolvent has attempted to avoid the contract. Plaintiff still retains the $1,500, the fruits of the contract to his insolvent, and now seeks to impose new and alien liabilities upon the defendant. The plainest elements of justice forbid such a course. As was said in *Parish* v. *Wheeler*, 22 N. Y. 494:

"The executed dealings of corporations must be allowed to stand for and against both the parties, when the plainest rules of good faith so require."

See, also, *Rehberg* v. *Tontine Surety Co.*, 131 Mich. 135 (91 N. W. 132).

The judgment is affirmed.

BIRD, C. J., and McALVAY, BLAIR, and STONE, JJ., concurred.