BRACHMAN v. WHEELOCK, INC.

1. BROKERS—COMMISSIONS—ACCOUNTS RECEIVABLE.

Arrangement between defendant and the lessee of its realty and purchaser of its tangible personalty did not constitute a sale of defendant's accounts receivable, where the purchaser merely agreed to collect such accounts as agent of defendant for a 9% commission, the defendant remaining the owner thereof and the one who would sustain the loss in the event of failure to collect any accounts; hence, plaintiff, broker was not entitled to commission for sale of the accounts.

2. CONTRACTS—TRANSFER OF PROPERTY—OPTIONS.

Provision of agreement whereby lessee of defendant's interest in real estate and purchaser of certain tangible property was given a 10-day option to purchase its accounts receivable by matching any bona fide offer made prior to a given date, merely constituted the transfer of an interest in the realty and tangible personalty.

3. SAME—ORAL UNDERSTANDINGS MERGED IN WRITTEN AGREEMENT.

Verbal understandings and negotiations are considered as merged in a written agreement that is full and complete, as such

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur, Brokers § 139.
[2] 55 Am Jur, Vendor and Purchaser § 27 et seq.
[3,4] 12 Am Jur, Contracts § 232.
[5] 8 Am Jur, Brokers § 224.
[6] 8 Am Jur, Brokers § 159.

a written agreement is conclusively presumed to embrace all that was intended to be included and to be the best possible evidence of the intent and meaning of the parties bound by it; hence, parol contemporaneous agreements cannot be admitted to contradict or vary the terms of the written agreement since they may be considered as intentionally rejected.

4. SAME—ORAL CONTRACTS MERGED IN WRITTEN CONTRACT.
   The contract reduced to writing merges therein all previous parol contracts relating to the same matter.

5. BROKERS—COMMISSIONS—ACCOUNTS RECEIVABLE—MERGER OF ORAL CONTRACTS IN WRITTEN AGREEMENTS.
   Plaintiff broker was not entitled to recover commission for sale of defendant's accounts receivable under alleged verbal arrangement that a commission should be paid in the event the accounts were collected by the owner or by its agent for that purpose, where the parties made a written agreement which did not include such a provision, as all verbal agreements were merged in the written contract.

6. CONTRACTS—IMPLIED CONTRACT—EXPRESS CONTRACT.
   Plaintiff broker is unable to recover on the theory of an implied contract for alleged services performed, where his declaration was based on the claim of an express agreement.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted June 8, 1955. (Docket No. 31, Calendar No. 46,461.) Decided October 3, 1955.

Action by Herman J. Brachman, doing business as H. J. Brachman Company, against Wheelock, Inc., a Michigan corporation, successor to Gardner-White Company, for commissions on accounts receivable claimed due on sale of business. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*John J. Sloan* and *G. Norman Gilmore,* for plaintiff.

*Voorhies, Long, Ryan & McNair,* for defendant.

CARR, C. J. Plaintiff brought this action in circuit court to recover a commission to which he claimed

he was entitled. The defendant, Wheelock, Inc., is the successor to Gardner-White Company, a corporation which for a number of years prior to the events giving rise to this litigation conducted a retail credit instalment furniture business at 3 locations in the city of Detroit. Its assets consisted of its inventory, fixtures, equipment, and accounts receivable. Its principal stockholders, Wendell K. Wheelock and Hugo H. Wheelock, owned certain parcels of real estate used by Gardner-White Company, and thereafter by Wheelock, Inc., in the carrying on of said business. Another parcel used as a warehouse and parking lot at the rear of one of the stores was owned by an affiliate of defendant.

Being desirous of disposing of the foregoing property, Wendell K. and Hugo H. Wheelock, the principal stockholders and officers of defendant corporation, discussed their problem with the plaintiff who was a licensed real-estate broker in the city of Detroit. Plaintiff claimed in the pleadings and other papers filed by him in this cause that as a result of these negotiations he became the agent of the owners of the property for the purpose of finding a purchaser of their respective interests, that he undertook to find a purchaser or purchasers, and that he interested one Arthur Leebove therein. Under date of October 9, 1952, the Crown Appliance Corporation, by Leebove as vice-president, made an offer to lease the real estate involved on specified terms and to purchase the inventory and other items at a price to be fixed by agreement. This offer was not accepted.

On October 20, 1952, an offer was made by the owners of the property to sell or lease the real estate used in the business of the Gardner-White Company, and to sell the other assets, including accounts receivable. Said offer was, however, subject to withdrawal prior to an acceptance thereof and was in

fact withdrawn on October 28, 1952. Said offer is of some significance because it clearly indicated that it was then the intention of the parties that the accounts receivable should be sold with the other items of personal property. The notice of withdrawal was addressed to plaintiff who was a party to the offer and who under the terms thereof was to receive a commission in the event of sales or leases being made pursuant thereto.

On December 23, 1952, Leebove made a written offer to lease the real estate and to purchase the inventory, fixtures, and equipment of the Gardner-White Company. No offer was made for the accounts receivable, but a provision was inserted that Leebove should have the right to match any bona fide offer therefor prior to February 1, 1954, upon 10 days written notice. The offer was accepted by Wendell K. and Hugo H. Wheelock, acting for themselves and for the corporations involved. Said acceptance contained an agreement to pay plaintiff the established Detroit real-estate board rate of commission for the services rendered. Plaintiff's signature appears on the agreement.

Under date of January 16, 1953, a further agreement in writing was made between the Gardner-White Company and Leebove, modifying in some minor respects the arrangement of December 23d preceding, and further providing that Leebove should collect for the Gardner-White Company its outstanding accounts for a commission of 9%. This agreement was not signed by plaintiff, and it contains no provision with reference to a commission to him. As indicating the understanding of the parties as to the nature of the transaction a clause was inserted giving to Leebove an option to meet any acceptable offer for the purchase of the accounts receivable, made on or before February 1, 1954, said option to be exercised within 10 days after writ-

ten notice. In accordance with his undertaking Leebove proceeded with the collection of the accounts. It was plaintiff's claim as set forth in his last-amended declaration that the amount so collected prior to February 28, 1954, was $340,595.31 out of a total of $437,427.31. It does not appear that any offer was made by anyone to purchase the accounts outright.

Plaintiff was paid his commission on the real-estate leases and on the sale of the inventory, fixtures, and equipment. His demand for a commission on the accounts receivable collected by Leebove was refused by the defendant corporation. Thereupon he brought this action, claiming to be entitled to a commission of 10%. Wendell K. Wheelock and Hugo H. Wheelock were joined as parties defendant, but on motion were dismissed. Said motion was denied as to the corporate defendant, subject to the understanding that plaintiff would file an amended declaration alleging an enforceable oral contract for the payment of the commission which he claimed the right to recover. Pursuant to such understanding, plaintiff's second-amended declaration was filed on October 29, 1954. Thereupon defendant asked that judgment be entered in its favor, asserting that the averments of fact in plaintiff's pleading were insufficient to permit recovery. The trial court agreed with the contention and entered judgment accordingly. Plaintiff has appealed.

It is the position of the appellant, in substance, that the agreement between defendant and Leebove for the collection of the accounts receivable may properly be considered a sale of said accounts, and that in any event the oral arrangement made between the parties whereby he became an agent for the purpose of finding a purchaser for the personal property of the Gardner-White Company, and a purchaser or lessee of the real estate, contemplated his right to a commission in the event of any means of dis-

position of the accounts receivable being accomplished. It is obvious that the accounts were not sold to Leebove. Defendant corporation remained the owner thereof and the loss in the event of failure to collect any of the accounts has fallen, or will fall, on it. As before pointed out, the language of the agreement for the collection is inconsistent with any claim that the parties at the time considered it a sale. If, therefore, plaintiff's undertaking was to find a purchaser therefor, the conclusion cannot be avoided that insofar as the accounts receivable were concerned he failed to perform.

This brings us to the claim advanced in argument in plaintiff's behalf that, under the terms of the oral arrangement between the parties, the collection of the accounts receivable entitled him to the commission claimed. It is somewhat significant in this respect that plaintiff, as appears from his reply to the answer to the first-amended declaration, undertook, subsequent to the written agreements above mentioned, to obtain from Leebove an offer to purchase the accounts outright. Such action may well be regarded as a recognition of the obligation that he had assumed with reference to the accounts receivable.

The agreement of December 23, 1952, to which, as before noted, plaintiff was a party, clearly indicated that at that time the parties had in contemplation the leasing of the real estate and the sale of the personal property assets of the Gardner-White Company. The provision giving to Leebove the right to match any bona fide offer for the purchase of the accounts receivable can be given no other logical construction. The rule is generally recognized that verbal understandings and negotiations are merged in a written agreement that is full and complete. In Nichols, Shepard & Co. v. Crandall, 77 Mich 401, 411, 412 (6 LRA 412), it was said:

"The general rule is that parol contemporaneous agreements cannot be admitted to contradict or to vary the terms of a written instrument. This rule is based upon the reasonable presumption that where parties have reduced their engagements to writing, and they are plainly and intelligibly stated therein, it is conclusively presumed to embrace all that was intended, and to be the best possible evidence of the intent and meaning of those who are bound by it. *Sutherland* v. *Crane,* Walk Ch (Mich) 523; *Martin* v. *Hamlin,* 18 Mich 354 (100 Am Dec 181); *Vanderkarr* v. *Thompson,* 19 Mich 82; *Seaman* v. *O'Hara,* 29 Mich 66; *Blackwood* v. *Brown,* 34 Mich 4; *Stackpole* v. *Arnold,* 11 Mass 27, 30 (6 Am Dec 150); *McLellan* v. *Bank,* 24 Me 566.

"It is laid down in the books as the principal cause of this rule that when parties, after whatever conversation or preparation, at last reduce their agreement to writing, this may be looked upon as the final consummation of their negotiation and the exact expression of their purpose; and all of their earlier agreements though apparently made while it all lay in conversation, which is not now incorporated into their written contract, may be considered as intentionally rejected. The parties write the contract when they are ready to do so, for the very purpose of excluding everything else and making this permanent and certain. 2 Greenleaf, Evidence (4th ed), 60."

In *Danto* v. *Charles C. Robbins, Inc.,* 250 Mich 419, it was held:

"A contract cannot rest partly in writing and partly in parol, but where contract is reduced to writing all previous parol contracts relating to the same matter are merged in the written contract." (Syllabus 2.)

Among other decisions recognizing the rule is *Nimmo* v. *Supernaw,* 279 Mich 126. The application of such rule in the instant case leads to the conclu-

sion that whatever verbal agreements may have been made prior to the written agreement of December 23, 1952, were merged in that instrument.

Plaintiff in his amended declaration refers to statements made at conferences between the parties indicating an understanding that he was to receive a commission upon the disposition of the assets in accordance with the prior agreement. The last-amended declaration does not allege that following December 23, 1952, an oral agreement was made by the parties whereby plaintiff should be paid a commission in the event that the accounts receivable were collected by the owner or by its agent for that purpose. As before indicated, it is plaintiff's theory, as set forth in his pleading, that a prior verbal arrangement of such tenor continued in force and effect. As above pointed out, all verbal agreements were merged in the written contract. In the absence of a new contract between the parties plaintiff is not entitled to recover. Paragraph 13 of the second amended declaration summarized his claim as follows:

"That in all the negotiations leading to final disposition of the assets, including the arrangement relating to accounts receivable, plaintiff participated as the agent of the defendant and with the knowledge and consent of its officers under the agreement and understanding arrived at prior to October 9, 1952, that plaintiff was to receive a commission for his service as hereinafter set forth."

The suggestion is made in argument that plaintiff should be permitted to recover on the theory of an implied contract arising from the rendition of services in connection with the collection of the accounts receivable. His declaration is not based on any such theory but, rather, rests on the claim of an express agreement. *Hathaway* v. *Vaughan*, 162 Mich 269.

To the extent that he performed the contract he received his commission.

The trial court was not in error in entering judgment for defendant, and such judgment is affirmed, with costs to appellee.

BUTZEL, SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.