NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0268n.06

Case No. 12-2671

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 10, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| General Electric Capital Corp., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| Harvey Gainey, Sr., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | ) | |

**Before: MERRITT, SUTTON, and GRIFFIN, Circuit Judges.**

**MERRITT, Circuit Judge.** This is a diversity collection case filed by plaintiff General Electric Capital Corporation to collect on a personal guaranty against defendant Harvey Gainey. Gainey is President and Chief Executive Officer of Gainey Corporation. The debts of two of its wholly-owned subsidiaries, Super Service, Inc. and Lester Coggins Trucking, Inc., are at issue in this appeal. The companies entered into equipment lease agreements and equipment financing agreements with General Electric Capital or its predecessors in interest. Gainey signed guaranties securing financing for the companies on several occasions, some in his individual capacity and others in his capacity as an officer of the companies. The only guaranty at issue in this case is a personal guaranty executed on January 19, 2005, in favor of General Electric

Capital to secure financing to purchase tractors for Super Service. The question is what indebtedness did the defendant guarantee and how much does he owe?

After denying summary judgment to General Electric Capital, the district court conducted a two-day bench trial and entered a verdict in favor of plaintiff General Electric Capital. The district court found that the language in the January 19, 2005, personal guaranty unambiguously covered lease agreements executed before 2005. The focus of this appeal is on the breadth of the personal guaranty executed by Gainey on January 19, 2005, and whether it covers the indebtedness of his companies under lease agreements executed prior to 2005 between Super Service and Lester Coggins Trucking and predecessors in interest of General Electric Capital. Gainey also challenges the damage award made by the district court on several grounds. For the following reasons, the judgment of the district court is affirmed.

## I.

Gainey executed a guaranty with Great Dane Limited Partnership to secure the indebtedness of Super Service for trailers leased from Great Dane pursuant to an Equipment Lease Agreement dated August 1, 2000. Plaintiff's Ex. 1. The guaranty was signed by Harvey Gainey on behalf of Gainey Corporation. Great Dane sold its rights under the lease agreements to General Electric Capital in 2003.

Gainey also executed a continuing personal guaranty with CitiCapital Commercial to secure the indebtedness of his company, Lester Coggins Trucking, for equipment leased with CitiCapital. Plaintiff's Ex. 15. CitiCapital sold its rights and interests in the lease with Lester Coggins Trucking to General Electric Capital in November 2004.

Super Service renewed its 2000 leases with Great Dane and its successor in interest, General Electric Capital, including a Master Lease Agreement executed on January 19, 2005.

Plaintiff's Ex. 3. In consideration of the renewal, and to secure financing for the purchase of new tractors, Gainey contemporaneously executed the personal guaranty at issue herein that guaranteed Super Service's obligations to General Electric Capital. Plaintiff's Ex. 2.

In 2008, Super Service and Lester Coggins Trucking, as well as other Gainey companies, filed for Chapter 11 bankruptcy. General Electric Capital sought to enforce the January 19, 2005, personal guaranty against Gainey when Super Service and Lester Coggins Trucking entered into bankruptcy and discontinued paying on their equipment leases with General Electric Capital.

## II. Liability under the Personal Guaranty

Gainey raises three arguments on appeal: (1) the evidence was not sufficient to find that the January 19, 2005, personal guaranty applies to the Super Service Equipment Lease from 2000; (2) in any event, there is no deficiency under the 2000 Super Service Lease that would be covered by the personal guaranty; and (3) whatever remained under the Lester Coggins Trucking Lease from 2004 should have been collected in the bankruptcy proceeding and not from Gainey.

A. The Terms of the January 19, 2005, Guaranty

The guaranty executed by Gainey in his personal capacity on January 19, 2005, reads as follows:

> To induce you [General Electric Capital Corporation] to enter into, purchase or otherwise acquire, now or at any time hereafter, any promissory notes, security agreements, chattel mortgages, pledge agreements, collateral, sale contracts, lease agreements, and/or any other documents evidencing, or relating to any lease, loan, extension of credit or other financial accommodation . . . to Super Service, Inc. . . ., but without in any way binding you to do so, the undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does herby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer [Super Service] may owe to you *now or at any time hereafter*, whether evidenced by an Account Document, an open account or otherwise, and whether it represents principal, interest, rent, late charges, indemnities, an original balance, an

> accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after the date or other disposition of any leased equipment, collateral or security, or any other type of sum of any kind whatsoever that the Customer may owe to you *now or in the future*, and does hereby further guarantee to you, your successors and assigns, the due, regular and punctual performance of any other duty or obligation of any kind or character whatsoever that the Customer may owe to you now or at any time hereafter . . . .

Plaintiff's Ex. 2 (emphasis added). The guaranty was executed as part of a January 19, 2005, transaction to renew the 2000 Equipment Lease Agreement and to buy additional new tractors. Gainey contends that the January 19, 2005, guaranty applied solely to the January 19, 2005, transaction to purchase new tractors and was not intended to cover any other transactions between his companies and General Electric Capital.

"Contracts of guaranty are to be construed like other contracts, and the intent of the parties, as collected from the whole instrument and the subject-matter to which it applies, is to govern." *Comerica Bank v. Cohen*, 805 N.W.2d 544, 548 (Mich. Ct. App. 2010) (quoting *First Nat'l Bank v. Redford Chevrolet Co.,* 258 N.W. 221, 223 (Mich. 1935) (quotation marks and citation omitted)). Therefore, a guaranty must be enforced as written if unambiguous and construction of the contract is a question of law for the courts. The district court, in its oral ruling, found the "breadth of the guarantee is unambiguous . . . . [T]he language of the guarantee is very broad indeed, using language like 'any obligation,' 'at any time,' 'any leased equipment,' 'any other type or sum of any kind,' 'owed to you now or hereafter.'" *Gen. Elec. Cap. Corp. v. Gainey*, Opinion and Judgment at 5-6, No. 1:09-CV-47 (W.D. Mich. Mar. 27, 2012). Accordingly, the district court found as a matter of law that "[t]his is a very broad guarantee" and it "is not just limited to the lease that was executed that day [January 19, 2005], but also includes the obligations of Super Service pursuant to the lease that was entered on August 1, 2000." *Id.*

at 6. We agree with the district court that the language is very broad and its meaning unambiguous.

The district court went on to hold that the extrinsic evidence that Gainey seeks to rely on, including oral conversations with General Electric Capital representatives, are merged into the contract and cannot be relied upon to defeat the plain language of the contract. We agree with the district court on this point as well. Therefore, because we hold that the unambiguous language of the guaranty covers any and all outstanding debt between Super Service and Lester Coggins Trucking and General Electric Capital incurred at any time, we do not need to consider the parol evidence presented by Gainey. We note, however, that even were we to consider evidence outside of the plain language of the contract, we would reach the same conclusion.

For example, Gainey testified at trial that he had personal conversations with representatives of General Electric Capital where he was assured that the 2005 personal guaranty covered only the 2005 lease agreement for the new tractors and not earlier lease obligations. He provided no corroborating documentation such as phone records or emails memorializing the alleged conversations. When a contract is reduced to writing, any previous parol agreements relating to the subject matter are merged into the written contract. *Brachman v. Wheelock, Inc.,* 72 N.W.2d 246, 249 (Mich. 1955). Gainey also relies on a document summarizing the 2005 agreement. The "Transaction Summary," prepared internally by General Electric Capital for employees of the company who are required to sign off on such transactions, is a sort of executive summary. That document contains equally broad language: "The [January 19, 2005] transaction will be cross-collateralized and cross-defaulted to all existing GE outstandings and will be further supported by the personal guarantee of Harvey Gainey." Plaintiff's Ex. 22.

Gainey also argues that the guaranty was only meant to cover payments relating to the lease agreement signed contemporaneously with the January 19, 2005, guaranty. This argument is unavailing in countering the broad language of the 2005 personal guaranty. The plain language of the 2005 guaranty covers "any and all" amounts due by Super Service to General Electric Capital "at any time hereafter." The payments at issue became due and owing in 2008, even though the agreement under which they became due was executed in 2000. The terms of the guaranty covered not only the new trucks financed by the January 19, 2005, lease, but unambiguously covered any amounts due by Super Service to General Electric Capital, including amounts due on trailers financed under the 2000 Equipment Lease.

B. Lack of Consideration for the Guaranty

Gainey contends that the personal guaranty is invalid for failure of consideration. He seems to be arguing that because he did not receive any personal benefit in his individual capacity, the personal guaranty cannot be valid. He argues that any consideration for the January 19, 2005, deal was provided to the corporation, Super Service, not to him personally. First, the plain language of the guaranty says it was given in return for valuable consideration. Plaintiff's Ex. 2. Gainey argues that because the guaranty is a separate document from the lease agreements, there must be separate consideration to support the guaranty. This is not so. The 2005 personal guaranty was a condition of General Electric Capital renewing the earlier lease agreement with Super Service for continued use of the trailers. Generally, renewal of an agreement is sufficient consideration to support a guaranty executed after the date of the original agreement. Restatement (Third) of Suretyship and Guaranty § 9, at 35 (1986). The same consideration that supported the lease agreements supported the guaranties.

Furthermore, adequate consideration is given to guarantors by execution of the principal contract contemporaneously with the execution of the guaranty. *W. T. Rawleigh Co. v. Trerice*, 195 N.W. 79, 82 (Mich. 1923). The lease agreement with Super Service executed contemporaneously with the personal guaranty on January 19, 2005, was for new Volvo tractors at a cost, financed by General Electric Capital, of $2,050,381. By making the additional credit available to Super Service to purchase the tractors, sufficient consideration was given for both the new indebtedness and the prior indebtedness.

### III. Damages

A. <u>Adequate Proof of the Damage Amount</u>

Gainey contends that General Electric Capital did not establish its damages at trial. We will overturn a district court's damages calculation only for clear error. *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 606 (6th Cir. 1988). The district court awarded a total of $429,175.65 to General Electric Capital. It arrived at this number through five exhibits entered into evidence by General Electric Capital at trial through Kevin Partin: Exhibits 11, 12, 17, 18 and 21. Kevin Partin testified at trial on behalf of General Electric Capital concerning the appraisals and the final amounts received at auction for the returned equipment. These exhibits are the proof of claims filed by General Electric Capital in the Super Service bankruptcy proceeding and the appraisals of Taylor & Martin, Inc., and AccuVal, two professional appraisal companies used to value the returned trailers. Gainey did not object to introduction of any of these exhibits at trial. The district court added together the deficiency on the 2000 Super Service Equipment Lease of $392,602.98 and the cure amount under the 2004 lease with Lester Coggins Trucking of $36,571.67 to arrive at the total damage amount.

While the burden was on General Electric Capital to establish damages, Gainey provided little reliable counterproof or challenge in the district court to the accuracy of the amounts put forth by General Electric Capital. Gainey simply claims that there is no deficiency on the Super Service Lease because the monthly payments were made until October 2008. Gainey provided little more than conclusory statements to counter or rebut the extensive documentation submitted by General Electric Capital.

B.  <u>October 6, 2006, Audit Letter Report from General Electric Capital to Super Service</u>

Gainey challenges the amount of indebtedness based on an audit report General Electric Capital sent to Super Service dated October 6, 2006. Defendant's Ex. D. Gainey contends that an entry on the audit report that said "Remaining Balance: $269,859.48" was the full amount due and owing on the 2000 lease amount as of September 30, 2006. Based on this number, Gainey claims that it is impossible that he would owe more than that amount in 2008 when payments stopped on the August 1, 2000, lease agreement.

Under the lease agreement, Super Service made a monthly rental payment. Also pursuant to the Equipment Lease, General Electric Capital was required to sell the trailers at the end of the lease term and Super Service was responsible for any amount less than 30% of the original cost. (This was to encourage the lessee, here Super Service, to maintain the equipment during the lease term.) Therefore, pursuant to the terms of the 2000 Equipment Lease and renewals of that lease, Super Service (and Gainey through the personal guaranty) owed monthly rent plus any shortfall below 30% of the original total cost of the trailers upon return of the trailers. The audit report shows only the monthly rent payments, not any resulting shortfall, which could not be calculated until the trailers were returned. Therefore, Gainey is incorrect that the October 2006

audit report is evidence of Super Service's total indebtedness to General Electric Capital as of that date.

## C. Mitigation of Damages

General Electric Capital had the duty to mitigate damages with respect to any breaches under the equipment leases. Gainey contends that General Electric Capital failed to get a reasonable price for the trailers returned pursuant to the lease terms. General Electric Capital relied on expert testimony and documentation of the trailers' value provided by professional appraisers. Gainey relied on the testimony of one of his employees and his own calculations and mostly anecdotal evidence that the trailers at issue were worth more than General Electric Capital had received for them.

Gainey advances two arguments to demonstrate that General Electric Capital did not adequately mitigate its damages under the terms of the equipment leases. First, Gainey contends that Super Service made inquiries in January 2009, after commencement of the bankruptcy, about not rejecting the leases in the bankruptcy proceeding and buying back 94 trailers from General Electric Capital but that General Electric Capital refused to consider this option. The only evidence that Super Service tried to "unreject" the leases came from the testimony of Carl Oosterhouse, an employee of Gainey Corporation. No documentation was offered at trial to corroborate that such an offer was made to General Electric Capital. Gainey points us to a memorandum dated March 23, 2009, from Gainey to Oosterhouse, but it was not offered into evidence at trial and we may not consider it on appeal. In any event, General Electric Capital denies it knew of this memorandum or the desire of Super Service to buy back the trailers except the testimony of Oosterhouse, which the district court, as the fact finder, did not find credible.

Second, General Electric Capital had the duty to conduct a commercially reasonable sale of the trailers once Super Service returned them. Gainey contends that General Electric Capital "received far less than it should have" because it did not let potential buyers know about the auction of the trailers, and the appraisal of the trailers was faulty. The trailers were all 2001 Great Dane models and were eight years old by the time of the auction. The trailers all sold for between $2,500 and $3,610 in early 2009. Gainey points to appraisals ranging between $6,000 and $11,000 in August 2008. Defendant's Exhibits Q, T and X. However, these appraisals were valuations based only on the make and age of the trailers without physically inspecting the actual trailers. Hence, these valuations used by Gainey are not particularly useful as true "appraisals." In addition, the market in early 2009 for hauling had declined considerably since the summer of 2008 due to the economic downturn during the fall of 2008.

Steven Phelps testified for General Electric Capital that he personally inspected the trailers and had Truck.com inspect the trailers. He testified that most of the trailers were in "poor" condition, citing a myriad of issues with the trailers. Gainey's only rebuttal to Phelps' testimony about the poor condition of the trailers was his own testimony about the condition of the trailers. On March 18, 2009, General Electric Capital conducted a liquidation auction of the trailers through the regularly scheduled auction process. From the auction and a separate sale after the auction to sell some of the unsold trailers, General Electric Capital received sale proceeds of $306,210. It also incurred additional expenses of $35,274.78 to sell the trailers. The deficiency after the liquidation was $392,603.98. Plaintiff's Ex. 12. We find no clear error in the district court's adoption of this calculation.

D. Lester Coggins Trucking

- 10 -

Gainey maintains that the district court erred in awarding General Electric Capital $36,571.67 as the "cure amount" for the Lester Coggins Lease from 2004. Gainey argues that General Electric Capital pursued recovery of all it was owed under the Lester Coggins Trucking Lease in the bankruptcy court and recovered everything to which it is entitled. However, General Electric Capital expressly reserved in the bankruptcy court the right to pursue Gainey for payment under the personal guaranty for the difference between the "Disputed Cure Amount" and the "Revised Cure Amount." Stipulated Order Resolving Disputed Cure Amount (Apr. 23, 2010). Ex. 17 at 2. The district court did not err in adding in the $36,571.67 "cure amount" to Gainey's personal liability for the deficiency not recovered in the bankruptcy court.

In sum, Gainey has not demonstrated that the district court's damage award was clear error.

For the foregoing reasons, we affirm the judgment of the district court.