*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BERT DEARING, JR. and DEARING'S PART 2 LLC,

Plaintiff/Counterdefendants-Appellees,

v

PENNY F. DEVAULL, ARDEN/FAYE CORPORATION, and DETROIT ARCHITECTURAL METALS COMPANY,

Defendants/Counterplaintiffs-Appellants.

UNPUBLISHED
November 21, 2023

No. 361634
Wayne Circuit Court
LC No. 20-007440-CB

Before: MURRAY, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

In this breach-of-contract case, defendants appeal as of right the order granting in part plaintiffs' motion for summary disposition under MCR 2.116(C)(10) (no genuine question of fact) and denying defendants' motion for summary disposition. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant Penny DeVaull owned and was the president of defendants Arden/Faye Corporation (AFC), and Detroit Architectural Metals Company (DAMC). In December 2019, DeVaull and plaintiff, Bert Dearing, Jr., entered into an agreement regarding a Detroit restaurant/bar known as "Chill." DAMC owned the real property where Chill was located (the premises). AFC owned the business's personal property, which included equipment and inventory. AFC also held a Class-C liquor license. DeVaull had been negotiating the sale of the business with a third-party, but those negotiations ceased when Dearing offered to purchase the business. Plaintiffs and AFC executed a Sale Agreement, through which plaintiffs would acquire the business's personal property and liquor license. After executing this agreement, plaintiffs tendered two cashier's checks made out to DeVaull totaling $375,000, one for $275,000 and another for $100,000. The parties later executed an addendum to the Sale Agreement at the request of the

-1-

Michigan Liquor Control Commission (the Commission), stating that $25,000 of the $100,000 check was for the liquor license.

In addition to the Sale Agreement, plaintiffs and DAMC entered into a lease agreement for the premises. The lease term was five years, beginning January 1, 2020, with rent in the amount of $1 a month for January and February 2020, increasing to $6,000 for all subsequent months, starting in March 2020, due on the first day of each month. The lease also required a security deposit of $6,000, as well as a $6,000 advance payment of the last month's rent. Dearing timely paid DeVaull a check for $12,001 to cover those amounts plus the January rent of $1.

Although the lease term began on January 1, 2020, Dearing was never given keys to the premises despite his requests to DeVaull. Dearing failed to timely pay the February and March rent. On March 2, 2020, DeVaull on behalf of DAMC, sent a notice to quit and termination of tenancy to plaintiffs for nonpayment of rent. On March 3, 2020, Dearing obtained a certified check for $1 for the February rent. However, Dearing later sent a certified letter to DeVaull referencing her failure to provide keys to or possession of the property, cancelling the contract, and demanding return of the $387,001 he had already paid.

Plaintiffs sued defendants for breach of the Sale and Lease Agreement, and defendants filed a counterclaim. Both sides moved for summary disposition under MCR 2.116(C)(10). In resolving these competing motions, the trial court first noted that this case involved multiple agreements among the parties. It concluded that these agreements were merged. It went on to grant defendants' motion for summary disposition on some of plaintiffs' claims, but deny defendants' request for entry of judgment on their counterclaim for breach of contract because "there is no genuine issue of material fact that defendant was the first party to breach the contract." The court granted plaintiffs' motion for summary disposition of defendants' breach-of-contract claim. It also granted plaintiffs' request for a rescission of the contract and awarded plaintiffs $403,091.35, inclusive of costs and interest. This appeal followed.

II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision to grant summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). The parties sought summary disposition under MCR 2.116(C)(10), which tests the factual support for a claim on the basis of the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006), citing MCR 2.116(G)(4). The evidence is viewed in the light most favorable to the nonmoving party, *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012), but review is limited to consideration of evidence properly presented to the trial court, *Barnard Mfg Co, Inc*, 285 Mich App at 380-381.

This Court reviews de novo issues of contract interpretation. *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 291; 778 NW2d 275 (2009). "When contractual language is unambiguous, courts must interpret and enforce the language as written because an unambiguous

contract reflects, as a matter of law, the parties' intent." *Harper Woods Retirees Ass'n v City of Harper Woods*, 312 Mich App 500, 508; 879 NW2d 897 (2015). However,

> [I]f provisions of a contract irreconcilably conflict or can be reasonably understood as meaning different things, the contract is ambiguous as a matter of law, and its proper meaning therefore becomes a question of fact. The courts may in that event consider extrinsic evidence to resolve the ambiguity, but the overarching goal, to which any rule of interpretation must bow, is to determine the intent of the parties. [*Andrusz v Andrusz*, 320 Mich App 445, 453; 904 NW2d 636 (2017) (citations omitted).]

Finally, we review de novo whether equitable relief is proper under the facts and "will set aside the trial court's findings of fact only if they are clearly erroneous." *Gleason v Kincaid*, 323 Mich App 308, 317; 917 NW2d 685 (2018). "The remedy of rescission is granted only in the sound discretion of the court. An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes." *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020) (quotation marks and citations omitted).

## III. BREACH OF CONTRACT

Defendants first argue that the trial court erred when it denied their motion for summary disposition of plaintiffs' breach-of-contract claim. We disagree.

We first address the interplay of the multiple agreements made by the parties. The parties agree that they had executed two written agreements, but defendants argued that there were two oral agreements while plaintiffs asserted there were none. Defendants assert these oral agreements pertained to issues related to the sale and lease of the premises. Regardless, the trial court found that any oral agreement was merged with the written agreements. The merger rule "generally recogniz[es] that verbal understandings and negotiations are merged in a written agreement that is full and complete." *Brachman v Wheelock, Inc*, 343 Mich 230, 235; 72 NW2d 246 (1955). The trial court went on to analyze the issues as though the multiple agreements were merged, and defendants do not explicitly challenge this on appeal. Therefore, the question whether the agreements were properly merged is abandoned on appeal. See *MOSES Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006) ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned.").

In breach-of-contract actions, the party claiming a breach "must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). Plaintiffs moved for summary disposition, in part, because defendants breached the agreement by failing to give them possession of the premises. In support of this argument, they attached the December 24, 2019 lease agreement, which stated it "shall run for five years commencing January 1, 2020 and ending December 31, 2024." It further read, in relevant part:

> 3. Rent: Lessee hereby covenants and agrees to pay Lessor , [sic] One ($1.00) Dollar per month for 2 months from January 1, 2020 to Match [sic] 1, 2020

and Six Thousand ($6,000.00) Dollars per month, on the 1st day of each month in advance, commencing March 1, 2020 thru December 31, 2024. Rent shall be paid to Penny De Vaull as agent for Lessor.

4. Posession [sic] of Property: Posession [sic] of 2000 Woodbridge St., Detroit, Michigan 48207 shal [sic] take place prior to transfering [sic] of the Class C – Liquor License from Arden Faye Corporation d/b/a Chill to Bert Dearing, Jr. and the paying of One Hundred Thousand ($100,000.00) Dollars in cashiers [sic] check made payable to Arden Faye Corporation in accordance with the Sale of Personal Property agreement dated December 19, 2019. It is hereby acknowledged that, as of the date of this lease, said nomey's [sic] have not been paid.

\* \* \*

13. Insurance: During the term of the lease, beginning January 1, 2020 including, but not limited to, any and all option periods, Lessee shall keep the premises insured at his/her expense against loss by fire, windstorm, and such other perils as are covered by "extended coverage" including a loss of rents clause on behalf of Lessor, with a responsible insurance company in a sum equal to at least replacement value of the building as of date of possession and revised upon completion of various improvements and shall deliver to the Lessor proof that such insurance is in full force and effect and that Lessor and Lessor's agent, Penny DeVaull, are named as an additional named insured. Any failure on the part of the Lessee to so insure the premise [sic] shall give the Lessor the right, but not the obligation, to insure the premises and charge the same to the Lessee with interest at the highest legal rate if after ten (10) days notice the Lessee fails to reimburse the Lessor for such expenditure, the Lessor shall have the rights set forth in the case of default in the payment of rent.

\* \* \*

17. Security Deposit: Lessee shall deposit with Lessor on the signing of this lease security deposit in the amount of SixThousand [sic] ($6,000.00) Dollars on December 19, 2019, for the performance of Lessee's obligations under this lease, including without limitation, the surrender of possession of the leased premises to the Lessor as required by the lease.

18. Last Month Rent: Lessee shall also deposit with Lessor during the first two months of this lease the amount of Six Thousand ($6,000.00) Dollars on December 19, 2019 as advance payment of Lessee's last month rent.

\* \* \*

25. Default: Default shall be at any time be made by said Lessee in the payment of the rent or any additional rent as herein provided, for the space of fourteen (14) days after any installment, or part thereof, becomes due and payable to the said Lessor, as herein provided without any notice whatsoever or if default shall be made in any of the other covenants and agreements herein contained, to be

kept, observed and performed by said Lessee, and such default shall continue for fourteen (14) days after notice thereof in writing to the said Lessee, it shall and may be lawful for the said Lessor, and Lessors' [sic] election, at any time thereafter, and without demand or further notice, the premises, and every part thereof, either with or without process of law, to re-enter, and the said Lessee, and every other person occupying, in or upon the same, to expel, to remove and put out, using such force as may be necessary in so doing, and the said premises again to repossess and enjoy as in his first and former estate, including all buildings or improvements then situated thereon which buildings and improvements shall become the property of the Lessor free and clear of any claim of Lessee or any third party.

It is fully understood and agreed by and between the said Lessor and Lessee that the said Lessor may pursue any of the remedies in this Lease provided, or which may be allowed at law or in equity, either separately or concurrently, and that any and all of the Lessors' [sic] rights and remedies are cumulative and not alternative, and shall not be exhausted by the exercise thereof on one or more occasions. It is also covenanted and agreed by the said Lessee that after the service of notice or the commencement of suit, or after final judgment for the possession of said premises, said Lessor may collect and receive any rent then due, and the payment of such rent shall not waive nor effect said notice, said suit, said judgment, or any other right of the said Lessor.

This lease is part of an agreement, dated December 19, 2019 between [AFC] and Bert Dearing, Jr., for the sale of personal property located at 2000 Woodbridge St., Detroit, Michigan 48207. Said Sale Agreement is contingent upon Bert Dearing Jr. honoring this 5 year lease and any default herein shall cause said sale agreement to become null and void and all personal property sold, therein, shall return to the ownership of [AFC] and the proceeds paid, therein, to be retained by [AFC] as additional liquidated damages, in addition to any default remedies contained herein.

Also attached to plaintiffs' motion for summary disposition was Dearing's affidavit in which he attested that defendant denied him possession of the building throughout January 2020.

It is undisputed Dearing timely paid January's rent, the security deposit, and the last month's rent totaling $12,001. Thus, looking to plaintiffs' evidence in relation to the plain terms of the lease agreement, plaintiffs fulfilled their initial obligations under the contract. They were therefore entitled to possession of the premises on January 1, 2020, and defendants breached the agreement when they denied possession on that date. Because plaintiffs' evidence in the motion for summary disposition demonstrated defendants' breach, the burden then shifted to defendants to show a genuine question of fact as to this issue.

Defendants argued in response that they were under no obligation to provide plaintiffs possession of the premises. They pointed to Paragraph 4 of the lease agreement stating plaintiffs were obligated to pay $100,000 "in accordance with the Sale of Personal Property" and that, as of the date of the lease agreement, this amount was not paid. In their view, plaintiffs were the first to breach the agreement when they failed to timely pay rent in February and March.

Defendants' arguments were untenable in light of the plain language of the lease agreement. The lease agreement stated that possession of the premises "shal [sic] take place *prior* to transfering [sic] of the Class C – Liquor License from Arden Faye Corporation d/b/a Chill to Bert Dearing, Jr. and the paying of One Hundred Thousand ($100,000.00) Dollars in cashiers [sic] check made payable to Arden Faye Corporation . . . ." (Emphasis added.) Under the plain language of the agreement, plaintiffs were entitled to possession of the premises *prior* to the $100,000 payment. Because plaintiffs had fulfilled their obligation to pay the security deposit and first and last months' rent, they were entitled to possession of the premises on January 1, 2020. Defendants breached the agreement when they failed to give plaintiffs possession of the premises on that date.

Moreover, defendants' argument that plaintiffs breached the agreement when they failed to timely remit rent for February and March is meritless. Under the first-substantial-breach rule, "[h]e who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 573; 127 NW2d 340 (1964) (quotation marks and citation omitted). Defendants were the first to breach the agreement by failing to offer plaintiffs possession on January 1, 2020.[1] Thus, the trial court did not err in granting plaintiffs' motion for summary disposition on the basis of defendants' breach. Despite this conclusion, defendants raise several arguments on appeal which we address in turn.

They first argue that the trial court impermissibly made findings of fact as to the "terms of the contract." However, the existence of a contract and the interpretation of its terms are questions of law, not fact. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). Thus, any rulings the trial court made about the purported oral agreements, Lease Agreement, Sale Agreement, and addendum are issues of law that cannot constitute errors of fact.

Defendants next argue that there was a genuine issue of material fact regarding damages. Notably, this section of defendants' brief on appeal contains no record or legal citations. Furthermore, it both ignores the actual basis of the trial court's ruling that equity required rescission of the contract. Because defendants failed to adequately develop this argument, it is abandoned and we decline to consider it. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (A party cannot "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

Defendants next challenge the trial court's interpretation of the terms of the oral agreements. But, regardless of the correct interpretation of these terms, the fact remains that the trial court determined that the oral agreements were merged with the written agreements. Because the agreements were merged, the parties were bound by the terms of all the agreements, including

---

[1] Notably, defendants do not assert that they did not commit a *substantial* breach of the contract. Instead, they contend that they did not commit *any* breach. It is therefore unnecessary that we consider whether defendants' breach was substantial. See *MOSES Inc*, 270 Mich App at 417.

the lease agreement. *Brachman*, 343 Mich at 235. As discussed above, defendants breached the lease agreement, and plaintiffs were entitled to summary disposition on this basis.

Defendants also contend that plaintiffs breached the Sale Agreement by failing to pay $100,000 for certain personal property and the Class-C liquor license. The Sale Agreement stated, in relevant part:

> On December 19, 2019, [AFC] d/b/a Chill, Seller, agrees to sell to Bert Dearing, Buyer, the following personal property located at 2000 Woodbridge St., Detroit, Michigan 48207 for the sum of One Hundred Thousand ($100,000) Dollars, to be paid within ninty [sic] (90) days from the date of this memorandum.

Under the plain language of this agreement, plaintiffs were obligated to pay defendants $100,000 "within ninty [sic] (90) days from the date of this memorandum." But, defendants breached the agreement on January 1, 2020—well before the expiration of plaintiffs' payment obligation under the Sale Agreement. Because defendants were the first to breach, the trial court did not err in granting summary disposition in plaintiffs' favor. *McCarty*, 372 Mich at 573.

Defendants' final argument is nonsensical. They contend that under the lease agreement, plaintiffs "failed to fulfill the conditions necessary for possession." But, other than reiterating plaintiffs' monthly rent obligations, they do not explain which terms of the lease agreement were the "conditions necessary for possession." Thus, this argument is abandoned for our review. *Yee*, 251 Mich App at 406.

## IV. RESCISSION

Defendants next argue the trial court abused its discretion when it granted plaintiffs' request for rescission. We disagree.

Rescission is a remedy rooted in equity and its purpose is to restore the status quo. *Augustyn v Zawacki*, 250 Mich 218, 220; 229 NW 453 (1930); *Papciak v Morawski*, 243 Mich 157, 158; 219 NW 601 (1928); *McMullen v Joldersma*, 174 Mich App 207, 218-219; 435 NW2d 428 (1988). "In order to warrant rescission of a contract, there must be a material breach affecting a substantial or essential part of the contract." *Omnicom of Mich v Giannetti Investment Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997).

> In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive. Other considerations include the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the wilfulness of the breaching party's conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract. [*Id.*]

Even so, "rescission should not be granted in cases where the result thus obtained would be unjust or inequitable." *Amster v Stratton*, 259 Mich 683, 686; 244 NW 201 (1932).

The trial court concluded that defendants materially breached the contract by withholding possession of the premises. It further concluded that, as of January 1, 2020, plaintiffs had fully performed their present obligations under the contract. Despite this performance—which included nearly $400,000 in payments to defendants—plaintiffs received nothing in return. Given the juxtaposition of the parties' performances under the contract, the trial court made a reasonable decision to restore status quo and order rescission of the contract. The trial court, therefore, did not abuse its discretion when it held that rescission was the appropriate remedy.

## V. DEFENDANTS' COUNTERCLAIM

Finally, defendants contend the trial court erred when it granted plaintiffs' motion for summary dismissal of defendants' counterclaims.[2] We disagree.

Defendants' primary argument as to this issue is that the trial court erred in finding that defendants breached the contract first, arguing that plaintiffs breached by failing to follow their obligations under the lease agreement. As we discussed in Issue III, defendants committed the first material breach of the contract. Therefore, defendants cannot recover under a breach-of-contract theory. *McCarty*, 372 Mich at 573. Thus, the trial court did not err in granting plaintiffs' motion for summary disposition of defendants' breach-of-contract claim.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Sima G. Patel

---

[2] Defendants' counterclaim also raised equitable claims requesting payment for rent and declaratory relief; they also made claims of promissory estoppel and detrimental reliance. While defendants' issue statement is couched as a challenge to the trial court's denial of their "counterclaims," they limit their substantive argument to whether the trial court erred in dismissing their breach-of-contract claim. Thus, any argument related to defendants' equitable claims is abandoned on appeal and we decline to consider it. *MOSES Inc*, 270 Mich App at 417.